UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DIANNE M. ADKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:16CV376 PLC |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

Plaintiff Dianne Adkins seeks review of the decision of the Acting Social Security Commissioner, Nancy Berryhill, denying her application for Disability Insurance Benefits under Title II of the Social Security Act.[1] Because the Court finds that substantial evidence supports the decision to deny benefits, the Court affirms the denial of Plaintiff's application.

## I. *Background and Procedural History*

In December 2012, Plaintiff, born February 28, 1954, filed an application for Disability Insurance Benefits alleging she was disabled as of January 1, 2000 as a result of bipolar disorder.[2] (Tr. 56-61). The Social Security Administration ("SSA") denied Plaintiff's claims, and she filed a timely request for a hearing before an administrative law judge ("ALJ"). (Tr. 68).

On October 17, 2014, an ALJ conducted a hearing at which Plaintiff and a vocational expert ("VE") testified. (Tr. 24-55). In a decision dated November 24, 2014, the ALJ applied

---

[1] The parties consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF No. 9).
[2] Plaintiff's prior application for Disability Insurance Benefits was denied on April 30, 1997 (Tr. 143).

the five-step evaluation process set forth in 20 C.F.R. §§ 404.1520[3] and determined that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from January 1, 2000, the alleged onset date, through December 31, 2001, the date last insured[.]" (Tr. 19).

The ALJ found that Plaintiff suffered the severe impairment of bipolar disorder. (Tr. 13). Based on his review of the medical opinion evidence, medical records, and testimony, the ALJ determined that, through December 31, 2001, Plaintiff had the residual functional capacity ("RFC") to "perform a full range of work at all exertional levels" with the following nonexertional limitations: "The claimant shall have limited contact with co-workers, supervisors and the public; and the claimant is limited to understanding, remembering and carrying out simple instructions." (Tr. 15). The ALJ further found that, through December 21, 2001, Plaintiff was unable to perform any past relevant work, but there existed a significant number of jobs in the national economy that Plaintiff could perform. (Tr. 18).

Plaintiff filed a request for review of the ALJ's decision with the SSA Appeals Council, which denied review on February 4, 2016. (Tr. 1-7). Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the SSA's final decision. Sims v. Apfel, 530 U.S. 103, 106-07 (2000).

## II. *Standard of Review*

A court must affirm the ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence 'is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.'" Cruze v. Chater, 85 F.3d

---

[3] To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. See 20 C.F.R. §§ 404.1520. Those steps require a claimant to show that he or she: (1) is not engaged in substantial gainful activity; (2) has a severe impairment or combination of impairments which significantly limits his or her physical or mental ability to do basic work activities or (3) has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) is unable to return to his or her past relevant work; and (5) the impairments prevent him or her from doing any other work. Id.

1320, 1323 (8th Cir. 1996) (quoting Boerst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993)). In determining whether the evidence is substantial, a court considers evidence that both supports and detracts from the Commissioner's decision. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). However, a court "do[es] not reweigh the evidence presented to the ALJ and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reason and substantial evidence." Renstrom v. Astrue, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006)).

"If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Partee v. Astrue, 638 F.3d 860, 863 (8th Cir. 2011) (quoting Goff v. Barnhart, 421 F.3d 785, 789 (8th Cir. 2005)). The Eighth Circuit has repeatedly held that a court should "defer heavily to the findings and conclusions" of the Social Security Administration. Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010); Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001).

### III.  *Discussion*

Plaintiff claims that the ALJ erred at step five of the sequential evaluation process, when he found, based upon the VE's testimony, that Plaintiff was capable of performing jobs that existed in significant numbers in the national economy. (ECF No. 14). Plaintiff contends the VE's testimony did not provide substantial evidence to support that finding because the: (1) hypothetical question did not contain all of Plaintiff's limitations; (2) VE's testimony conflicted with the Dictionary of Occupational Titles ("DOT"); and (3) VE's testimony lacked a reliable basis. (Id.). In response, Defendant asserts that the ALJ properly relied on the VE's testimony

because: (1) the jobs identified by the VE were consistent with Plaintiff's RFC; (2) the VE's testimony was consistent with the DOT; and (3) the VE's testimony was reliable. (ECF No. 19).

At step five of the sequential analysis, the burden shifts to the Commissioner to establish that the plaintiff maintains the RFC to perform a significant number of jobs in the national economy. 20 C.F.R. § 416.920(a)(4)(iv)-(v). See also Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000). "Generally, if the claimant suffers from nonexertional impairments that limit her ability to perform the full range of work described in one of the specific categories set forth in the guidelines, the ALJ is required to utilize testimony of a vocational expert." Jones v. Astrue, 619 F.3d 963, 971-72 (8th Cir. 2010) (quoting Reed v. Sullivan, 988 F.2d 812, 816 (8th Cir. 1993)). "Testimony from a vocational expert constitutes substantial evidence only when based on a properly phrased hypothetical question." Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996).

At the hearing, the VE testified that he had been working as a vocational consultant with disabled adults "for the past 25 or 30 years." (Tr. 49). Based on his experience working with individuals suffering bipolar disorder, he stated that whether a person with bipolar disorder is able to work "depends on the severity and the ability to control. In and of itself, bipolar disorder would not preclude a person from working." (Tr. 50). The VE opined that, when people with bipolar disorder are not able to maintain employment, it is generally due to an inability "to respond appropriately to supervision and coworkers, and even the public"; difficulty adapting to "changes in the work setting"; inability to "remember even simple instructions"; and unreliable attendance. (Tr. 50).

> The ALJ presented to the VE the following hypothetical question:
>
> Now if I were to find that with medication or therapy, [Plaintiff] would have been able to do light work in the time period in question, in a low stress

4

environment. And by that I mean limited contact with coworkers; with the public, no contact; and limited contact with supervisors. And no quota types of high-pressure situations. Are there jobs that could be done if those were the only limitations I were to find?

(Tr. 51). The VE responded that such an individual could perform "unskilled light work" that "would include production work such as a bench assembler," "maids and house cleaners, such as laundry workers"; and "manufacturing jobs." (Tr. 51-52). In follow-up, the ALJ inquired: "[I]f somebody had had the type of background that Ms. Adkins said she had as a special school district teacher, to what extent at age 40 would there be a problem transitioning into the more menial lower skilled type of work that you've talked about?" (Tr. 52). The VE answered "I don't think that there would be a transition problem. Certainly it's a different type of work. . . . But a person would be able to do it, because it's simply unskilled and easy to learn." (Id.).

The ALJ relied upon the VE's testimony at step five of the sequential analysis. (Tr. 18-19). The ALJ found that Plaintiff could perform the jobs of bench assembler and laundry worker, and he concluded that, because Plaintiff "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy," a finding of "not disabled" was appropriate. (Id.).

*A. Hypothetical questions*

Plaintiff claims that the ALJ erred in relying upon the VE's responses to hypothetical questions that did not contain the limitations in the ALJ's RFC finding. (ECF No. 14 at 5-7). More specifically, Plaintiff asserts that, because the ALJ's hypothetical questions did not include a limitation to "understanding, remembering and carrying out simple instructions," substantial evidence does not support the ALJ's finding that a significant number of jobs existed that Plaintiff could perform. Defendant counters that, because the ALJ's follow-up question referred to "lower skilled type of work" and the VE identified "unskilled" work, which is work that

requires understanding, remembering, and carrying out simple instructions, the ALJ properly relied on the VE's answers to the hypothetical questions.

"A hypothetical question must precisely describe a claimant's impairments so that the vocational expert may accurately assess whether jobs exist for the claimant." Newton v. Chater, 92 F.3d 688, 694-95 (8th Cir. 1996) (citing Smith v. Shalala, 31 F.3d 715, 717 (8th Cir. 1994)). While the hypothetical question need not contain a description of the claimant's impairments in diagnostic terms, it must "capture the concrete consequences" of the impairments. Lacroix v. Barnhart, 465 F.3d 881, 889 (8th Cir. 2006)). A vocational expert's opinion that is based on a hypothetical question that does not encompass all relevant effects of a claimant's impairments cannot constitute substantial evidence to support an ALJ's decision. Renstrom, 680 F.3d at 1067.

In his initial hypothetical question, the ALJ included the following nonexertional limitations: low-stress environment; limited contact with coworkers and supervisors; no contact with the public; and "no quota types of high-pressure situations." (Tr. 50-51). However, the ALJ did not include the limitation to "understanding, remembering, and carrying out simple instructions," which he incorporated in the written RFC. (See Tr. 15). In response to the ALJ's hypothetical question, the VE opined that such individual required "unskilled light work" and identified the jobs of bench assembler and laundry worker. (Tr. 51). When the ALJ asked whether such an individual over the age of forty would have difficulty transitioning "into the more menial lower skilled type of work that you've talked about," the VE replied that there would not be "a transition problem" because the jobs he identified were "unskilled and easy to learn." (Id.).

The SSA defines "unskilled work" as work requiring "the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to

supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85–15, 1985 WL 56857, at *4 (Soc.Sec.Admin.1985). By limiting the individual to unskilled work that is easy to learn, the ALJ captured the practical consequences of Plaintiff's need for simple instructions. See, e.g., Hillier v. Soc. Sec. Admin., 486 F.3d 359, 366 (8th Cir. 2007). To the extent the ALJ erred in assessing a written RFC limiting Plaintiff to simple instructions where the hypothetical question only referred to unskilled work, such error was harmless. See, e.g., Zeier v. Colvin, No. 4:15-CV-156-RWS-SPM, 2016 WL 1068995, at *10-11 (E.D.Mo. Feb. 26, 2016); Schupp v. Colvin, No. 4:14-CV-679 JMB, 2015 WL 5076916, at *6 n.4 (E.D.Mo. Aug. 27, 2015); Tomlin v. Colvin, No. 4:13-CV-2424 SPM, 2015 WL 58934, at *17-18 (E.D.Mo. Jan. 5, 2015); Miller v. Colvin, No. 4:14-CV-155 NAB, 2014 WL 7392154, at *5-6 (E.D.Mo. Dec. 29, 2014); Areno v. Colvin, No. 4:12-CV-1669, 2013 WL 5291754, at *14-15 (E.D.Mo. Sept. 19, 2013).

Plaintiff suggests the ALJ's hypothetical questions were inadequate because the VE identified "unskilled jobs" – bench assembler and laundry worker – that require level 2 reasoning according to the Dictionary Occupational Titles. (ECF No. 14 at 6-7). Plaintiff maintains that the requirements of level 2 reasoning conflicts with her limitation to understanding, remembering, and carrying out simple instructions. (Id.).

The DOT defines level 2 reasoning as requiring the employee to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." Moore v. Astrue, 623 F.3d 599, 604 (8th Cir. 2010) (quoting *DOT* at 1011). "The Level 2 reasoning definition is an upper limit across all jobs in the occupational category, not a requirement of every job within the category." Id. As such, the requirements of some bench-assembler and laundry-worker positions will be less rigorous than those listed in the DOT. Moreover, there is

no direct conflict between "detailed but involved" instructions and "simple instructions." Indeed, this circuit has repeatedly held that the ability to understand, remember, and carry out simple instructions is not inconsistent with work requiring level 2, or even level 3, reasoning. See, e.g., Renfrow v. Astrue, 496 F.3d 918, 921 (8th Cir. 2007) ("expert's opinion that claimant who was limited to following 'simple, concrete instructions' could work as cashier was not inconsistent with *Dictionary of Occupational Titles* description of cashier as requiring level three reasoning."); Alie v. Berryhill, No. 4:16-CV-1353 JMB, 2017 WL 2572287, at *13 (E.D.Mo. June 14, 2017) ("[A]n ability to follow simple instructions and perform non-detailed tasks is not inconsistent with level 2 reasoning[.]"); Filbert v. Colvin, 2015 WL 1474873, at *11 ("The law in this Circuit is clear – any potential inconsistency between a reasoning level of three and the ability to follow only simple instructions on non-detailed tasks is not a conflict."); Wilson v. Colvin, No. 4:13-CV-1533-AGF-NAB, 2014 WL 4741091, at *9 (E.D.Mo. Sept. 23, 2014) (the RFC limitations regarding the plaintiff's ability to understand, remember, and carry out simple instructions and non-detailed tasks were "not inconsistent with work requiring Level 2 reasoning[.]"). The Court therefore finds that the VE's responses to the ALJ's hypothetical questions constitute substantial evidence to support the ALJ's finding at step 5 of the disability determination.

B. *Conflict with the DOT*

Plaintiff argues that, even if the ALJ had asked the VE to consider a limitation to simple instructions, "the same response would have produced a conflict with the DOT[.]" (ECF No. 14 at 8). Plaintiff also argues that the ALJ erred in failing to obtain from the VE testimony regarding conflicts between his testimony and the DOT. (Id.). Defendant counters that there is

no direct conflict between "detailed but involved" instructions and "simple instructions." Indeed, this circuit has repeatedly held that the ability to understand, remember, and carry out simple instructions is not inconsistent with work requiring level 2, or even level 3, reasoning. See, e.g., Renfrow v. Astrue, 496 F.3d 918, 921 (8th Cir. 2007) ("expert's opinion that claimant who was limited to following 'simple, concrete instructions' could work as cashier was not inconsistent with *Dictionary of Occupational Titles* description of cashier as requiring level three reasoning."); Alie v. Berryhill, No. 4:16-CV-1353 JMB, 2017 WL 2572287, at *13 (E.D.Mo. June 14, 2017) ("[A]n ability to follow simple instructions and perform non-detailed tasks is not inconsistent with level 2 reasoning[.]"); Filbert v. Colvin, 2015 WL 1474873, at *11 ("The law in this Circuit is clear – any potential inconsistency between a reasoning level of three and the ability to follow only simple instructions on non-detailed tasks is not a conflict."); Wilson v. Colvin, No. 4:13-CV-1533-AGF-NAB, 2014 WL 4741091, at *9 (E.D.Mo. Sept. 23, 2014) (the RFC limitations regarding the plaintiff's ability to understand, remember, and carry out simple instructions and non-detailed tasks were "not inconsistent with work requiring Level 2 reasoning[.]"). The Court therefore finds that the VE's responses to the ALJ's hypothetical questions constitute substantial evidence to support the ALJ's finding at step 5 of the disability determination.

B. *Conflict with the DOT*

Plaintiff argues that, even if the ALJ had asked the VE to consider a limitation to simple instructions, "the same response would have produced a conflict with the DOT[.]" (ECF No. 14 at 8). Plaintiff also argues that the ALJ erred in failing to obtain from the VE testimony regarding conflicts between his testimony and the DOT. (Id.). Defendant counters that there is

no inconsistency between the VE's testimony and the DOT and thus no need to inquire about a conflict. (ECF No. 19 at 7).

Vocational expert testimony should generally be consistent with the DOT. See SSR 00-4P, 2000 WL 1898704 (Dec. 4, 2000). Under Social Security Ruling (SSR) 00-4p, the ALJ must "ask about any conflict" between VE evidence and "information provided in the DOT." Id. In response, "[a] VE must offer an explanation for any inconsistencies between [the VE's] testimony and the DOT, which the ALJ may accept as reasonable after evaluation." Moore v. Colvin, 769 F.3d 987, 990 (8th Cir. 2014).

As previously discussed, there is no inconsistency between the VE's testimony that an individual with Plaintiff's RFC could perform the jobs of bench assembler and laundry worker and the DOT, which describes those jobs as requiring level 2 reasoning. A limitation to understanding, remembering, and carrying out simple instructions is not inconsistent with level 2 reasoning. See, e.g., Alie, 2017 WL 2572287, at *13; Filbert, 2015 WL 1474873, at *11.

Plaintiff further claims that the ALJ's failure to ask the VE questions regarding conflicts with the DOT requires reversal. (ECF No. 14 at 9). Social Security Rule 00–4p, mandates: "When a [vocational expert] or [vocational specialist] provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that [vocational expert] or [vocational specialist] evidence and the information provided in the [Dictionary of Occupational Titles]." Jones, 619 F.3d at 977 (quoting Renfrow, 496 F.3d at 920-21). The ALJ is therefore required not only to ask the expert whether there was a conflict, but also to obtain an explanation for any such conflict. Id. In light of the Court's finding that there was no conflict between the VE's testimony and the DOT, any error in failing to inquire about such conflicts was harmless. See, e.g., Renfrow, 496 F.3d at 921 ("ALJ's failure

9

to ask the vocational expert about possible conflicts between his testimony and the *Dictionary of Occupational Titles* was harmless, since no such conflict appears to exist.").

   C. *Reliable Basis*

Finally, Plaintiff appears to argue that the VE's testimony lacked a reliable basis because it contained information that does not appear in the DOT. (ECF No. 14 at 10-15). Specifically, Plaintiff challenges the VE's testimony relating to the numbers of bench-assembler and laundry-worker jobs in the national and regional economies.[4] (Id.). In response, Defendant asserts that: (1) Plaintiff's argument is "specious" because "there is no serious question whether the jobs of bench assembler or laundry worker exist in significant numbers in the national economy"; (2) the VE cited a reliable source, namely the Occupational Employment Survey; and (3) the VE is only required to identify the source of extra-DOT data when it conflicts with the DOT.

As Defendant notes in her brief, the VE testified that he would "depend on the Bureau of Labor Statistics data, specifically the Occupational Employment Survey, in order to estimate numbers." (Tr. 51). The SSA has taken administrative notice of "Occupational Analyses prepared for the Social Security Administration by various State employment agencies" and the "Occupational Outlook Handbook, published by the Bureau of Labor Statistics." 20 C.F.R. § 416.966(d). The ALJ did not err in adopting the vocational expert's testimony regarding the number of jobs available to a hypothetical individual with Plaintiff's limitations. The VE relied upon acceptable sources in formulating his answers.

---

[4] Plaintiff cites SSR 00—04p in support of her position that the ALJ must articulate findings providing a basis for relying on the VE's testimony regardless of whether the testimony is in conflict with the DOT. "This Court has previously held that there must be an apparent and actual inconsistency between the DOT and the VE's testimony before triggering the additional development requirements of Social Security Ruling 00-04p." Alie, 2017 WL 2572287, at *15.

*IV.  Conclusion*

For the reasons discussed above, the undersigned finds that substantial evidence in the record as a whole supports the Commissioner's decision that Plaintiff is not disabled. Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying Social Security benefits to Plaintiff is **AFFIRMED.**

A separate judgment in accordance with this Memorandum and Order is entered this date.

/s/ Patricia L. Cohen
_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 20th day of February, 2018